**Electronically Filed**
**Intermediate Court of Appeals**
**28798**
**03-FEB-2011**
**07:43 AM**

NO. 28798

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


GRACE M. LOPRESTO-NAKAMURA n.k.a. GRACE MARI LOPRESTO,
Plaintiff-Appellant/Cross-Appellee,
v.
KENJI NAKAMURA, Defendant-Appellee/Cross-Appellant.


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 97-2467)


**MEMORANDUM OPINION**
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

In this action stemming from a divorce, Plaintiff-Appellant/Cross-Appellee Grace M. Lopresto-Nakamura, n.k.a. Grace Mari Lopresto ("Lopresto") and Defendant-Appellee/Cross-Appellant Kenji Nakamura ("Nakamura") both appeal from the following orders entered by the Family Court of the First Circuit (Family Court):[1] (a) the July 30, 2007 order regarding Plaintiff's Motion for Enforcement Relief and Defendant's Motion for Relief from Decree or in the Alternative for Termination of Spousal Support (July 30, 2007 order); and (b) the December 21, 2007 Findings of Facts and Conclusions of Law (findings and conclusions).

---

[1] The Honorable Gregg Young presided.

Appellant Lopresto raises the following four points of error on appeal:

1. The Family Court committed reversible error in concluding that Lopresto committed fraud as of 2001, and in granting relief based on Rules 60(b)(6) and 60(b)(3) of the Hawai'i Family Court Rules (HFCR).

2. The Family Court erred in finding and concluding that Nakamura's failure to make reasonable efforts to discover the fraud nevertheless entitles him to relief.

3. The Family Court erred in finding that Lopresto committed fraud and failed to adopt appropriate findings and conclusions to support a finding of fraud.

4. The Family Court failed to charge interest for delinquent alimony payments.

Cross-Appellant Nakamura raises the following seven points of error on appeal:

1. The Family Court erred in finding that Nakamura's failure to discover Lopresto's fraud before late 2000/early 2001 barred Nakamura from relief prior to December 31, 2001.

2. The Family Court erred in awarding Lopresto $37,000 in outstanding base support.

3. The Family Court erred in failing to award Nakamura $90,000 for alimony paid to Lopresto from September 1997 to February 2005.

4. The Family Court erred in failing to award Nakamura the $5,000 he paid to Lopresto in December 2005 pursuant to an order granting a motion for continuance.

5. The Family Court erred in failing to find that Lopresto altered the Divorce Decree after Nakamura signed it.

6. The Family Court erred in failing to modify the definition of "income" in the Divorce Decree from "adjust[ed] gross" income to "taxable income," and erred in its finding of Nakamura's adjusted gross income.

2

7.  The Family Court erred in denying Nakamura's Motion for Reconsideration or to Alter/Amend Order Filed on July 30, 2007.

Based upon a careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we vacate the Family Court's July 30, 2007 order and the December 21, 2007 findings and conclusions. We remand to the Family Court for further proceedings consistent with this opinion.

I.  **Factual Background and Proceedings Below**

Nakamura and Lopresto were granted a divorce by way of a Divorce Decree filed on August 20, 1997. The Divorce Decree, signed by both parties, required Nakamura to pay Lopresto alimony for fifteen years "regardless of Plaintiff's remarriage." The amount of the alimony payments under the Divorce Decree started at a base of $1,000 per month, with provisions for certain annual percentage increases. There were also conditional increases to the base amount, dependent on whether Nakamura's annual income exceeded certain specified levels.[2] Following entry of the

---

[2]  The Divorce Decree states, in relevant part:

> (1) Defendant shall pay as and for support and maintenance to Plaintiff, a monthly sum of one thousand U.S. dollars (U.S. $1,000.00), taxable under the U.S. tax law to Plaintiff, as support and maintenance, to be paid to her on the first day of each month commencing on the first day of August, 1997.
> (2)  The above-mentioned alimony payments to be made by Defendant as set forth in this agreement shall be for fifteen (15) years regardless of Plaintiff's remarriage. The above-mentioned alimony payments shall be increased by the lesser of (1) of [sic] percentage of Defendant's income increase or (2) five percent (5%) per annum. If Defendant's annual income should exceed one hundred thousand U.S. dollars ($100,000.00), the alimony payment will be increased to two thousand U.S. dollars ($2,000.00) per month beginning on the first day of the following year with an increase by the lesser of (1) a percentage of Defendant's income increase or (2) 5% per annum; if Defendant's annual income
> (continued...)

Divorce Decree, Nakamura paid alimony to Lopresto from September 1997 through February 2005 in the amount of $1,000 per month, with no increases. He stopped making alimony payments thereafter.

On September 28, 2005, Lopresto filed her Motion for Enforcement Relief seeking payment of alimony from Nakamura pursuant to the Divorce Decree provisions, as well as interest, attorneys' fees, and sanctions. In her supporting affidavits, Lopresto alleged that despite her numerous requests to Nakamura for the "cost of living" increases due under the Divorce Decree and for his tax returns to determine if she was entitled to an increase in base alimony, Nakamura did not provide the increased payments or his tax returns.

On October 25, 2005, Nakamura filed a Motion for Relief from Decree or in the Alternative for Termination of Spousal Support, citing to HFCR Rules 54.1 and 60(b)(6). In his supporting affidavit, Nakamura alleged that he had agreed to pay $1,000 per month for fifteen years, but that alimony was to terminate upon Lopresto's remarriage; and that he had agreed to increases and decreases to the alimony amount that were different than what was reflected in the Divorce Decree. Nakamura alleged that he stopped paying alimony after learning in 2000 or 2001

---

[2] (...continued)
     should exceed two hundred thousand U.S. dollars ($200,000) per annum, the alimony payment will be increased to three thousand U.S. dollars ($3,000.00) per month beginning on the first day of the following year with an increase by the lesser of (1) a percentage of Defendant's income increase or (2) 5% per annum; if Defendant's annual income should exceed three hundred thousand U.S. dollars ($300,000.00) per annum, the alimony payment will be increased to $4,000.00 per month beginning on the first day of the following year with an increase by the lesser of (1) a percentage of Defendant's income increase o[r] (2) 5% per annum.
          This agreement shall terminate only upon Plaintiff's death. . . .

(Emphasis added).

that Lopresto had remarried, at which point she told him the Divorce Decree required payment even after her remarriage. He states he then reviewed a filed copy of the Divorce Decree and alleges to have learned that Lopresto had made changes to the Divorce Decree after he signed it. According to Nakamura, he did not take action at that time because Lopresto acknowledged the "true" agreement, that alimony payments terminated upon her remarriage. However, Nakamura further asserts that he thereafter continued to pay $1,000 a month even though he believed he was not obligated to make payments, because Lopresto asked him to help her a little while longer and he sympathized with her financial situation.

As an alternative basis for his motion before the Family Court, Nakamura asserted that "[i]n the event this Court denies Defendant relief under Rule 60(b)(6) of the Family Court Rules, this Court should terminate future spousal support on the basis that there has been [a] material change in circumstances, and Plaintiff no longer requires support." Given its ruling based on HFCR Rule 60(b), the Family Court did not reach this issue.[3]

The Family Court held a consolidated trial on the parties' motions on October 26, 2005, April 7, 2006, and June 22, 2007. At trial, the parties disputed numerous factual points, including: whether Nakamura had agreed to the terms in the Divorce Decree which tracked the terms in a Divorce Agreement also signed by Nakamura;[4] whether Lopresto had fraudulently altered the Divorce Decree; whether, prior to his signing the Divorce Decree, Lopresto made false representations to Nakamura

---

[3] Because the Family Court did not reach this issue, we express no opinion on Nakamura's alternative ground for relief.

[4] Nakamura claims to have made handwritten changes to the Divorce Agreement which were to have been incorporated into the Divorce Decree.

that changes he had requested were made; whether Lopresto concealed from Nakamura the fact that she had remarried in 1998;[5] and the circumstances that led to Nakamura continuing to pay alimony up to February 2005.

Nakamura asserted at trial that he did not review the Divorce Decree before signing it because Lopresto assured him that changes he had allegedly requested had been made, including that alimony would terminate upon Lopresto's remarriage. He stated he did not have a copy of the filed Divorce Decree[6] and contends that it was not until late 2000 or early 2001, over three years after the Divorce Decree was filed, that he reviewed a filed copy of the Divorce Decree. Nakamura asserted at trial that he continued to make alimony payments after learning about Lopresto's remarriage because he contended Lopresto acknowledged that their agreement had been to terminate payments upon her remarriage, Lopresto needed financial assistance at the time, Lopresto agreed not to seek an increase in the payment amount, and Nakamura believed it would be too costly to litigate. He testified that he terminated monthly alimony payments to Lopresto in March 2005 because he believed that she no longer needed his financial assistance.

On July 30, 2007, the Family Court entered its order resolving the parties' motions and on December 21, 2007 entered its Findings of Facts and Conclusions of Law. The Family Court ruled that Lopresto had committed fraud, but that Nakamura owed some outstanding alimony to Lopresto in the amount of $37,000. Specifically, the Family Court concluded that "[Lopresto] committed fraud by telling [Nakamura] that the Divorce Decree

---

[5] Lopresto claims that she told Nakamura she had remarried and that Nakamura met her new husband in Hawaii in May 2000.

[6] Lopresto's attorney filed a Certificate of Service on September 11, 1997 stating that the Divorce Decree was mailed to Nakamura.

contained the terms of their oral agreement, including the term that alimony terminated upon her remarriage" and that "[Nakamura] relied on [Lopresto's] representation to his detriment." However, the Family Court also concluded that Nakamura did not discover the fraud until "he finally obtained a copy of the Divorce Decree in late 2000/early 2001," and because he "failed to take reasonable efforts to discover the fraud before late 2000/early 2001, he is not entitled to relief until December 31, 2001." The court found that as of December 31, 2001, Nakamura owed Lopresto outstanding base support of $37,000,[7] but did not award attorneys' fees or interest on the award.

Nakamura filed a Motion for Reconsideration on August 9, 2007, which the court denied by order filed September 25, 2007. Both parties filed timely notices of appeal.

## II. Discussion

### A. HFCR Rule 60(b)

The Family Court's grant or denial of a motion under HFCR Rule 60(b) is reviewed for abuse of discretion. De Mello v. De Mello, 3 Haw. App. 165, 169, 646 P.2d 409, 412 (1982); see also In re RGB, 123 Hawai'i 1, 16, 229 P.3d 1066, 1081 (2010); Hayashi v. Hayashi, 4 Haw. App. 286, 291, 666 P.2d 171, 175 (1983).

> An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. In addition, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.

---

[7] The court calculated the $37,000 due as follows: $1,000 for the month of August 1997 and $1,000 per month (in addition to the $1,000 per month Nakamura already paid) from January 1999 through and including December 2001. The amounts owing from January 1999 to December 2001 appear to be based on the Family Court's finding that Nakamura's annual income began to exceed $100,000 in 1998. Under the Divorce Decree, if Nakamura's annual income exceeded $100,000, Lopresto was entitled to an increase in the base alimony from $1,000 to $2,000 starting on the first day of the following year.

<u>In re RGB</u>, 123 Hawaiʻi at 16-17, 229 P.3d at 1081-82 (internal citations, brackets, and quotation marks omitted).

Moreover and importantly, "[t]he timeliness of a motion brought pursuant to HFCR Rule 60(b) implicates the jurisdiction of the family court." <u>Child Support Enforcement Agency v. Doe</u>, 98 Hawaiʻi 499, 503, 51 P.3d 366, 370 (2002).

HFCR Rule 60(b) reads, in its entirety, as follows:

**Rule 60. RELIEF FROM JUDGMENT OR ORDER.**

**(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) <u>fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party</u>; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) <u>any other reason justifying relief from the operation of the judgment.</u> **The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken**. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

HFCR Rule 60(b) (2006) (emphasis added).[8]

In its December 21, 2007 findings and conclusions, the Family Court appears to have merged and relied upon both HFCR Rules 60(b)(6) and 60(b)(3), although the basis for its ruling is

---

[8] HFCR Rule 60(b) is substantially similar to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 60(b) and Federal Rules of Civil Procedure (FRCP) Rule 60(b); therefore, "the treatises and cases interpreting HRCP, Rule 60(b) and FRCP, Rule 60(b) provide persuasive reasoning for the interpretation of HFCR 60(b)." <u>Hayashi</u>, 4 Haw. App. at 290 n.6, 666 P.2d at 174 n.6; <u>see also</u>, <u>Child Support Enforcement Agency</u>, 98 Hawaiʻi at 503 n.7, 51 P.3d at 370 n.7.

clearly its finding that Lopresto had committed fraud. The Family Court referenced both HFCR Rules 60(b)(6) and 60(b)(3), recited requirements for proving fraud, and then concluded that Lopresto "committed fraud" by misrepresenting the terms contained in the Divorce Decree. By conflating clauses (6) and (3) of HFCR Rule 60(b), the Family Court did not properly apply the requirements for either provision. Further, although the Family Court specifically noted that a motion under HFCR Rule 60(b) must be made "within a reasonable time" and, for fraud, "not more than one year after the judgment, order, or proceedings was entered or taken," the Family Court's ruling did not address the timeliness of Nakamura's motion seeking relief from the Divorce Decree.

### (1)  Rule 60(b)(6)

Nakamura's motion sought relief pursuant to HFCR Rule 60(b)(6), but such relief was precluded given the circumstances of this case and Nakamura's basis for seeking relief. The Hawai'i Supreme Court has held that where the asserted grounds for relief are based on "circumstances specified in one or more of clauses (1) through (5) of HFCR Rule 60(b), [the] motion cannot, as a matter of law, be construed as a HFCR Rule 60(b)(6) motion." Child Support Enforcement Agency, 98 Hawai'i at 504, 51 P.3d at 371; see also Hayashi, 4 Haw. App. at 290, 666 P.2d at 174 (HFCR Rule 60(b)(6) "is a residual clause" designed to "provide relief for considerations *not covered by the preceding five clauses.*") (emphasis added); Citicorp Mortg. Inc. v. Bartolome, 94 Hawai'i 422, 437-38, 16 P.3d 827, 842-43 (App. 2000) (noting that first five clauses of HFCR 60(b) are mutually exclusive of the sixth clause); 12 Moore's Federal Practice ¶ 60.48[2] (3d ed. 2010).

Here, Nakamura claimed he was entitled to relief from the Divorce Decree because of Lopresto's alleged fraudulent actions and the Family Court based its granting of relief on a

9

finding that Lopresto had committed fraud. "Fraud" is one of the grounds for relief specifically stated in the first five clauses of HFCR Rule 60(b), being set forth in Rule 60(b)(3). Therefore, because fraud is a basis for relief under HFCR Rule 60(b)(3), the Family Court abused its discretion in relying on Rule 60(b)(6) to grant relief to Nakamura.

### (2)    Rule 60(b)(3)

The Family Court also erred in relying on HFCR Rule 60(b)(3) as a basis for its ruling. As the Family Court noted and as expressly stated in the rule, a motion pursuant to Rule 60(b) "shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken." (Emphasis added). In this case, the Divorce Decree was entered on August 20, 1997 and Nakamura filed his motion seeking relief from the Divorce Decree on October 25, 2005, over eight years later. The rule explicitly provides that commencement of the one-year period is triggered by entry of the judgment or order, and there is no extension of time for filing a motion under HFCR Rule 60(b)(3) based on when the alleged fraud is discovered.[9]

In Child Support Enforcement Agency, the Hawai'i Supreme Court determined that the movant's motion for relief from judgment was barred even though she alleged to have first discovered potential new evidence and/or fraud almost two years after the judgment was entered. 98 Hawai'i at 501, 504, 51 P.3d at 368, 371. Given the one-year limit applicable to HFCR Rules 60(b)(1) and 60(b)(3), the Hawai'i Supreme Court held that the family court did not have jurisdiction to consider the motion. Id. at 505, 51 P.3d at 372. Likewise, under the substantially

---

[9] In this case, even such an extension would be of no avail to Nakamura because he claims to have discovered the alleged fraud in late 2000 or early 2001, and still did not seek relief from the Divorce Decree until October 2005.

similar Rule 60(b) of the Federal Rules of Civil Procedure (FRCP), the one-year period applicable to clauses (1), (2) and (3) is deemed an absolute limit. "The concept of reasonable time cannot be used to extend the one-year limit. A motion under clauses (1), (2), or (3) must be denied as untimely if made more than one year after judgment regardless of whether the delay was reasonable." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2866 at 391 (2nd ed. 1995); see also 12 Moore's Federal Practice ¶ 60.65[2][a] (3d ed. 2010); U.S. v. Marin, 720 F.2d 229, 231 (1st Cir. 1983) (ruling that one-year limit under FRCP Rule 60(b)(1), (2) and (3) was "absolute bar" to debtor's motion for relief from judgment on basis that adverse party concealed relevant information); Serzysko v. Chase Manhattan Bank, 461 F.2d 699 (2nd Cir. 1972) (holding that plaintiff's motion to set aside prior judgment on grounds of newly discovered witnesses that would establish adverse party's witnesses committed perjury at trial was time barred under FRCP Rules 60(b)(2) and (3)).

Thus, the Family Court erred in granting relief from the Divorce Decree based on HFCR Rule 60(b)(3) because this basis was time barred and the Family Court lacked jurisdiction to act pursuant to this rule. Child Support Enforcement Agency, 98 Hawai'i at 505, 51 P.3d at 372.

### (3) Family Court Orders Vacated

Given that the Family Court did not have authority to act under HFCR Rule 60(b)(6) or Rule 60(b)(3), we vacate the July 30, 2007 order and the December 21, 2007 findings and conclusions. Our ruling in this regard disposes of Lopresto's first three points of error on appeal, as well as Nakamura's points of error 1-3, and 5. It also disposes of: that part of Nakamura's sixth issue on appeal that contends the Family Court erred in not modifying the definition of income in the Divorce

Decree;[10] and that part of Nakamura's seventh point of error asserting the Family Court should have amended its July 30, 2007 order by terminating alimony on the date of Lopresto's remarriage.[11]

B.     **Interest Owed on Outstanding Alimony Award**

In her motion to enforce the Divorce Decree, Lopresto requested that the Family Court award ten percent interest per annum on alimony payments owing to her.  In her fourth point of error on appeal, she asserts that the Family Court erred in failing to award her post-judgment interest pursuant to HRS § 478-3 (2008).  Nakamura does not address the issue of interest in his briefs on appeal.  We review a ruling as to interest claimed under HRS § 478-3 for abuse of discretion.  Metcalf v. Voluntary Emps.' Benefits Ass'n, 99 Hawai'i 53, 57, 52 P.3d 823, 827 (2002) (citation omitted).

"In the absence of express statutory authority governing the payment of interest in a specific type of claim, HRS § 478-3, governing the payment of interest in civil judgments generally, applies."  Metcalf, 99 Hawai'i at 60, 52 P.3d at 830 (citation omitted).  HRS § 478-3 mandates that: "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit."  (Emphasis added).  On remand, the Family Court should therefore address and consider the post-judgment interest on the amount of alimony that the Family Court ultimately

_____

[10]  This argument was based on Nakamura's assertion that, like the remarriage provision, the definition of income in the decree was supposed to have been amended before it was finalized for Nakamura's signature.

[11]  Nakamura's seventh point of error contends the Family Court erred in denying his motion for reconsideration of the July 30, 2007 order, which sought to have the Family Court amend its July 30, 2007 order by: (1) terminating alimony on the date of Lopresto's remarriage, rather than 2001; and (2) crediting Nakamura the amount of $44,000 he alleges to have paid Lopresto after December 31, 2001.

12

determines Nakamura owes under the Divorce Decree.  See Doe v. Doe, 97 Hawai'i 160, 163, 34 P.3d 1059, 1062 (App. 2001).

C.    **Nakamura's Claims Regarding Credit For Amounts Paid**

In his fourth point of error on appeal, Nakamura contends the Family Court erroneously failed to award him $5,000 that he paid in December 2005 pursuant to a court order continuing trial.  As part of his seventh point of error, Nakamura argues that the Family Court erred in not amending its July 30, 2007 order to credit him for $44,000 he alleges to have paid Lopresto after December 31, 2001.  On remand, the Family Court will address the amount of alimony due to Lopresto and therefore may consider the off-sets, if any, because of the amounts already paid by Nakamura.

D.    **Finding As To Nakamura's Income**

Nakamura contends, as part of his sixth point of error on appeal, that the Family Court erred in finding his adjusted yearly income exceeded $100,000 for the years 1998-2003 and exceeded $200,000 for the years 2004 and 2006.

Findings of fact are reviewed for clear error.  Child Support Enforcement Agency v. Roe, 96 Hawai'i 1, 11, 25 P.3d 60, 70 (2001).  A factual finding "is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made."  Id. (citations omitted).

Based on the record, we conclude the challenged findings by the Family Court are not clearly erroneous.  To the contrary, an exhibit regarding the calculation of Nakamura's adjusted income and Nakamura's testimony as to his income provide substantial evidence to support the Family Court's findings.

## III. Conclusion

Based on the foregoing, we vacate the Family Court's July 30, 2007 order and the December 21, 2007 findings and conclusions and remand this case to the Family Court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, February 3, 2011.

On the briefs:

Catherine H. Remigio
for Plaintiff-Appellant/
Cross-Appellee

Kathy M. Kim
for Defendant-Appellee/
Cross-Appellant

Presiding Judge

Associate Judge

Associate Judge